IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MELISSA TUCKER, Individually and on behalf of all
others similarly situated,

                Plaintiffs,

-against-

EAST SIDE DD, EAST SIDE DD 101 LLC, EAST SIDE
DD 104 LLC, EAST SIDE DD 105 LLC, EAST SIDE
DD 106 LLC, EAST SIDE DD 107 LLC, EAST SIDE DD 110
LLC, EAST SIDE DD 111 LLC, EAST SIDE DD 115
LLC, EAST SIDE DD 116 LLC, EAST SIDE DD 119
LLC, EAST SIDE DD 120 LLC, EAST SIDE DD 121
LLC, MATTHEW BRONFMAN, ALMOG GEVA,
PINCHAS SHAPIRO and JOHN DOES #1-10, Jointly and
Severally,

                Defendants.

11 CV 4907 (AKH)

ECF Case


**DEFENDANTS' MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Eric J. Wallach
Joseph A. Piesco, Jr.
Attorneys for the Defendants

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     FACTUAL ALLEGATIONS ................................................................................. 5

        A.      History of the Corporate Defendants ...................................................... 5

        B.      Shapiro Manages All Aspects of the Corporate Defendants ................... 6

        C.      Plaintiff's Gratuities Claim ..................................................................... 7

        D.      The "Spread of Hours" Claims ............................................................... 9

III.    LEGAL ARGUMENT ......................................................................................... 9

        A.      Legal Standard ........................................................................................ 9

        B.      Plaintiff's Claims Against Bronfman and Geva Should Be Dismissed ............... 10

        C.      Plaintiff's Claim For Unpaid Gratuities Fails As A Matter Of Law .................... 12

        D.      Plaintiff's "Spread Of Hours" Claim Should Be Dismissed ................................ 15

IV.     CONCLUSION .................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Amaker v. Glenn S. Goord, Comm'r,
   98 Civ. 3834, 2002 U.S. Dist. LEXIS 5932 (S.D.N.Y. Mar. 29, 2002) ...........................13, 14

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ..............................................................................................................9, 10

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ...................................................................................................................9, 10

Chan v. Triple 8 Palace, Inc.,
   03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. Mar. 31, 2006) ................................15

Copantitla v. Fiskardo Estiatorio, Inc.,
   788 F.Supp.2d 253, 2011 U.S. Dist. LEXIS 58670 (S.D.N.Y. May 27, 2011) .......................10

DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,
   770 F.Supp.2d 497 (E.D.N.Y. 2011) ...................................................................................14, 15

Diaz v. Consortium for Worker Educ., Inc.,
   10 Civ. 01848, 2010 U.S. Dist. LEXIS 107722 (S.D.N.Y. Sept. 28, 2010) ......................10, 11

Elliott v. Leatherstocking Corp.,
   3:10-cv-934, 2011 U.S. Dist. LEXIS 40722 (N.D.N.Y. Apr. 14, 2011) ................................13

Espinosa v. The Delgado Travel Agency, Inc.,
   05 Civ. 6917, 2007 U.S. Dist. LEXIS 15149 (S.D.N.Y. Mar. 2, 2007) ................................15

Fu v. Pop Art Int'l Inc.,
   10 Civ. 8562, 2011 U.S. Dist. LEXIS 113614 (S.D.N.Y. Sept. 19, 2011) .............................15

Galasso v. Eisman, Zucker, Klein & Ruttenberg,
   310 F.Supp.2d 569 (S.D.N.Y. 2004) ........................................................................................16

Garcia v. La Revise Assocs. LLC,
   No. 08 Civ. 9356, 2011 U.S. Dist. LEXIS 3325 (S.D.N.Y. Jan. 13, 2011) ............................13

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999) ......................................................10

Lin v. Comprehensive Health Mgm't, Inc.,
   08 Civ. 6519, 2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. Apr. 8, 2009) ............................10, 11

Nakahata v. N. Y. Presbyterian Healthcare Sys.,
     10 Civ. 2661, 2662, 2683, 3247, 2011 U.S. Dist. LEXIS 8585
     (S.D.N.Y. Jan. 28, 2011)..................................................................................16

Tracy v. NVR, Inc., 667 F.Supp.2d 247 (W.D.N.Y. 2009) ...........................................11

Winans. v. Starbucks Corp.,
     No. 08 Civ. 3734, 2011 U.S. Dist. LEXIS 76066 (S.D.N.Y. July 11, 2011) ........................13

**STATUTES**

29 U.S.C. §203(d) .........................................................................................10

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. .....................................................2

N.Y. Lab. Law §196-d ...............................................................................12, 13

Article 6 of the New York Labor Law....................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2)....................................................................................9

N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.4.........................................................15

N.Y. Comp. Codes R. & Regs tit. 12, §146-2.16.....................................................13, 14

Fed R. Civ. P. Rule 12(b)(6) .............................................................................9

Defendants East Side DD, East Side DD 101 LLC, East Side DD 104 LLC, East Side DD

105 LLC, East Side DD 106 LLC, East Side DD 107 LLC, East Side DD 110 LLC, East Side

DD 111 LLC, East Side DD 115 LLC, East Side DD 116 LLC, East Side DD 119 LLC, East

Side DD 120 LLC, East Side DD 121 LLC (collectively, the "Corporate Defendants"),[1] Matthew

Bronfman ("Bronfman"), Almog Geva ("Geva") and Pinchas Shapiro ("Shapiro") (collectively,

the "Individual Defendants", together with the Corporate Defendants, the "Defendants"),

respectfully submit this Memorandum of Law in support of their Motion to Dismiss (i) named

Plaintiff Melissa Tucker's ("Plaintiff") Complaint against Individual Defendants Bronfman and

Geva in its entirety, (ii) Plaintiff's Third Claim for Relief, and (iii) Plaintiff's purported "spread

of hours" claim, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

## I.   PRELIMINARY STATEMENT

In January 2008, Individual Defendant Bronfman and several other investors purchased

15 existing Dunkin Donuts franchises in New York City as an investment.  Since that time,

through a series of acquisitions, Bronfman, along with several other passive investors, purchased

additional Dunkin Donuts franchises at various locations throughout Manhattan.

Individual Defendant Geva, who is Bronfman's financial advisor and General Counsel,

was designated as the investors' authorized representative and appointed as Chief Executive

Officer for the limited purpose of negotiating the franchise agreements and forming the corporate

entities for each of the store franchises.  Thereafter, Geva's role primarily was limited to

assisting in the transition of the newly acquired stores and handling transactional corporate work

related to the franchises.  Following their acquisition, the day-to-day operations of the franchises

---

[1] Defendants East Side DD 116 LLC, East Side DD 119 LLC and East Side DD 120 LLC are incorrectly identified
in the caption of the Complaint.  The correct names of these entities are East Side DB II 116 LLC, East Side DB II
119 LLC and East Side DB II 120 LLC.  In addition, East Side DD 121 LLC does not exist.

continued to be managed by pre-existing management until March 2009, when Individual

Defendant Shapiro was hired as the Corporate Defendants' Chief Executive Officer.  Since that

time, Shapiro exclusively has managed, directed and overseen all operational aspects of the

franchises and made, and continues make, all employment-related decisions relating to same.

On July 18, 2011, Plaintiff, a former manager who was terminated for, among other

reasons, stealing from Defendants' stores, filed a putative class and collective action alleging that

Defendants failed to pay (i) wages and overtime to a purported class of current and former

exempt managers and assistant managers in violation of the Fair Labor Standards Act, 29 U.S.C.

§ 201 et seq. (the "FLSA"), and Article 6 of the New York Labor Law and various regulations

promulgated thereunder (the "NYLL") (First, Second and Fourth Claims for Relief); (ii)

gratuities to hourly, non-exempt employees in violation of the NYLL's tip-pooling regulations

(Third Claim for Relief); and (iii) so-called "spread of hours" pay for hourly, non-exempt

individuals who allegedly worked in excess of 10 hours a day in accordance with the NYLL (it is

not pleaded as a separate claim).

Plaintiff's claims against Individual Defendants Bronfman and Geva require dismissal

because neither is an "employer" under the NYLL or FLSA.  Bronfman does not have, nor has

he ever had, any involvement in the management of the operations of the franchises.  He is

nothing more than one of several investors in the Corporate Defendants.  Individual Defendant

Geva never has had any involvement in the day-to-day management of the franchises.  Geva's

role primarily was limited to assisting in the acquisition of the franchises, negotiating and

providing legal advice relating to the franchises and, for a brief period of time, assisting in the

transactional aspects of the franchises.  As made clear in their affidavits, submitted in support of

the Defendants' Motion, all aspects of the management of the franchises, including decisions to

hire, fire, discipline, set management policies relating to the payment of wages and overtime, managing the companies' books and records, etc., are handled and made exclusively by Individual Defendant Shapiro.  Since Bronfman and Geva have no involvement in the management of the Corporate Defendants' business operations and are not involved in setting any of the Corporate Defendants' compensation policies or practices, neither could be considered an "employer" for purposes of the NYLL or FLSA.[2]

Second, Plaintiff's Third Claim for Relief, i.e., her claim of unpaid gratuities, should be dismissed.  Plaintiff, who alleges she was a tip-eligible employee (a "Crew Member") at one store for a mere two months, i.e., April and May 2007, seeks to represent a class of current and former hourly, tip-eligible employees for a six-year period.  Putting aside the fact that Plaintiff certainly is not a suitable representative of this purported class,[3] nowhere in the Complaint does she plead – because she cannot – that Defendants improperly retained tips that she should have received during this very brief period of time.  Indeed, the Corporate Defendants did not even own the store at this time.  Regardless, Plaintiff's claim rests on nothing more than a conclusory allegation that she did not receive her correct share of the tips received at the one store in which she worked as a Crew Member for two months.[4]

---

[2]   Plaintiff alleges that, "Upon information and belief, Defendant[s] Bronfman [and Geva] [are] officer[s], director[s] and/or managing agent[s] of . . . the Corporate Defendants . . . who participated in the day-to-day operations of the Corporate Defendants" and that they "directed and controlled Plaintiff's work and maintained operational control over the hours that the Defendants' employees worked and the wages that they were paid." Compl. ¶¶ 21-22.  There is no basis for this allegation whatsoever.

[3]   Plaintiff cannot possibly represent such a class.  Plaintiff claims she was tip-eligible for a very brief period of time, at one store no less, and she has no personal knowledge as to what tips were, or were not, collected at any of the Corporate Defendants' other stores.

[4]   Plaintiff makes various allegations regarding the pooling of tips into a central bank account and the manner in which such tips were distributed.  See Compl. ¶¶52, 62.  Suffice it to say, there is nothing under NYLL regulations which prohibits such tip-pooling practices, and there is nothing which prohibits employers from agreeing with employees about the manner in which tips are to be shared and distributed.  Nor does Plaintiff suggest that such practices are improper.

Fatal to her claim is the fact that Plaintiff has no personal knowledge whatsoever of the Corporate Defendants' gratuity practices. She most certainly does not know what tips were or were not collected at any of the Corporate Defendants' other stores. She also has no basis to allege that the Corporate Defendants retained any tips collected from the only store she worked at, or any other store. In an effort to cure this obvious and fatal deficiency, she attaches to her Complaint the declaration of a former payroll manager, Shanta Brown, who purports to recount supposed "illegal" tip practices. But, she too concedes that she has no personal knowledge of the amounts that were received in gratuities each week at any of the Corporate Defendants' stores, and has no knowledge regarding any bank transactions relating to the tip-pooling account. Incredibly, Ms. Brown was not employed until long after Plaintiff was promoted to a managerial position and cannot possibly know what the Corporate Defendants tip-pooling practices were before or after her brief period of employment. Simply put, Plaintiff cannot possibly maintain a class action claim for purportedly unpaid tips when she has no personal knowledge of the amounts of tips collected and cannot allege in good faith that any of the Defendants retained tip money in violation of the NYLL.

Finally, Plaintiff's "claim" that Defendants did not comply with New York's so-called "spread of hours" regulation requires dismissal as a matter of law for two clear reasons. First, Plaintiff's Complaint is devoid of any factual allegations which purport to support this claim. Second, it is well established that New York's spread of hours regulation applies only to non-exempt, hourly employees who are paid minimum wage. Plaintiff, who alleges she was paid $10 per hour, was paid more than the prevailing minimum wage under New York law. Nor does she allege in her Complaint that any of the employees she seeks to represent were paid minimum wage. Thus, Plaintiff's spread of hours claim properly should be dismissed.

Based on the foregoing, and the reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety as against Individual Defendants Bronfman and Geva, and her unpaid gratuities and spread of hours pay claims should be dismissed as a matter of law with prejudice.

## II.   **FACTUAL ALLEGATIONS**[5]

### A.   **History of the Corporate Defendants**

In or around January 2008, Individual Defendant Bronfman, along with two other passive investors, purchased 15 existing Dunkin Donuts franchises in New York City.  Affidavit of Mathew Bronfman, dated November 10, 2011 ("Bronfman Aff."), at ¶2; Affidavit of Almog Geva, dated November 11, 2011 ("Geva Aff."), at ¶3.  At the time of purchase, the investors organized each store as a separate limited liability company, and formed East Side DD LLC ("ESDD"), which is the holding company through which the investors made their investments in the stores.  ESDD is the parent company and sole member of the individual store LLCs. Bronfman Aff. ¶2.

At the time that ESDD was created and the 15 stores were acquired, Individual Defendant Geva, Bronfman's personal financial advisor and General Counsel, was designated to serve as the investors' authorized representative and "Chief Executive Officer" for the limited purpose of negotiating the franchise agreements, creating the various corporate entities and assisting in the transition of, and providing legal and financial advice regarding, the newly acquired stores. Bronfman Aff. ¶2; Geva Aff. ¶3.  During late 2008 and early 2009, the investors acquired additional franchise locations and, like before, Geva's role was limited to forming the corporate entities and a parent holding company (named East Side DD II LLC) through which the investments were made, and providing legal and financial advice with respect to these additional franchises.   Bronfman Aff. ¶3; Geva Aff. ¶3.  Notably, following their acquisition the day-to-

---

[5] For purposes of the instant Motion only, Defendants assume the truth of Plaintiff's factual allegations.

day operations of all of these franchises were managed by the prior management who were retained for that specific purpose. Geva Aff. ¶4. Geva has never been involved in managing the daily operations of the Corporate Defendants and has no involvement in setting or managing the Corporate Defendants' compensation policies and practices. Ibid.; Affidavit of Pinchas Shapiro, dated November 11, 2011 ("Shapiro Aff."), at ¶4.

In March 2009, Individual Defendant Shapiro was hired to manage and oversee all aspects of the franchises and was given complete control and unfettered discretion to manage and oversee the Corporate Defendants' operations. Bronfman Aff. ¶4; Geva Aff. ¶5. Mr. Geva continues to serve as liaison between Shapiro and the investors and, in this capacity provides periodic updates regarding the performance of the company to the investors. Geva Aff. ¶6.

### B.   Shapiro Manages All Aspects of the Corporate Defendants

Since the acquisition of the original franchises in January 2008, and the subsequent acquisitions of others, Individual Defendant Bronfman has been nothing more than a passive investor. He has had no involvement whatsoever in any of the business operations of the Corporate Defendants. Bronfman Aff. ¶¶4-5. In this regard, Bronfman has no knowledge of, and is not involved in making decisions regarding, the management of business affairs of the Corporate Defendants, and has never been involved or even consulted regarding issues such as employee compensation, the hiring and firing of employees, setting policies regarding payroll and compensation practices, or any other employment-related decisions. Ibid. Although initially designated as ESDD's "CEO", as noted above, Geva's role at that time was limited to assisting in the financial and legal affairs of the Corporate Defendants and providing legal advice and assistance to the investors (including Bronfman).[6] Geva Aff. ¶¶3-4. Like Bronfman, Geva has

---

[6] Geva technically "terminated" the prior management team (two individuals) after Shapiro was hired to take over the business operations, but other than that never has been involved in the hiring or firing of employees.

no involvement in the day-to-day management of the Corporate Defendants and is not involved in setting the Corporate Defendants' compensation policies or practices or any other employment-related matters. Shapiro Aff. ¶4.

Individual Defendant Shapiro, the Chief Executive Officer of ESDD, manages all aspects of the operations of the Corporate Defendants. Shapiro Aff. ¶3. On occasion, Shapiro provides Geva with updates regarding the financial performance and general operations of the franchises, when and if he believes it is necessary to do so. Ibid. ¶5. On a very few occasions Shapiro may have told Bronfman or Geva about a significant employment decision he made. Geva Aff. ¶7. However, all decisions regarding the management and operations of the franchises are made by Shapiro, and Shapiro (and his delegated managers) makes all decisions regarding the hiring, firing and discipline of employees, setting working hours and rates of pay, and setting the Corporate Defendants' wage payment and payroll policies and practices. Shapiro Aff. ¶3.

C. **Plaintiff's Gratuities Claim**

According to the Complaint, Plaintiff was hired by the Corporate Defendants in April 2007 as a Crew Member, which is an hourly, non-exempt position. Compl. ¶51. Plaintiff worked at one of the Corporate Defendant's stores as a Crew Member for two months. Ibid. Thereafter, she was promoted to the position of Assistant Manager, and then Manager, both of which are salaried, exempt positions. Ibid. In May 2011, Plaintiff's employment was terminated for cause based on repeated misconduct. Ibid.

During the brief period of time in which she held the position of Crew Member, Plaintiff was eligible for and regularly received a share of the gratuities earned at her store. Compl. ¶52. The Corporate Defendants maintained a system of tip pooling for all hourly, tip-eligible employees in which Defendants collected and deposited all of the gratuities from each store location into a designated bank account. According to the Complaint, on a weekly basis, Crew

7

Members would receive either $5 or $20 from that pooled account based on his or her full or part-time status. Compl. ¶52. Plaintiff alleges in a conclusory fashion that under this tip-pooling system (which she does not claim in and of itself to be unlawful), employees were not paid all gratuities earned at each store location.

According to her Complaint, however, Plaintiff was a Crew Member for only two months, at only one store no less (out of 10 store locations). Plaintiff does not, because she cannot possibly, allege that employees at any other locations did not receive their proper share of the tips received at any other location inasmuch as she has no personal knowledge regarding the amount of tips collected at any other store.

In an attempt to cure this deficiency, Plaintiff attaches a purported declaration from Defendants' former payroll manager, Shanta Brown, who worked for ESDD for about a year (2010). Compl. ¶52. Putting aside the fact that Ms. Brown has no personal knowledge regarding the Corporate Defendants' tip-pooling practices prior to 2010, or when Plaintiff herself was a Crew Member, notably absent from both the Complaint and Ms. Brown's declaration is any fact-specific information to support Plaintiff's general conclusory claim that gratuities were retained by any of the Defendants. Moreover, Ms. Brown concedes she has no personal knowledge of the amounts of tips received by the stores or how much was deposited into the bank account established to handle these funds, and thus cannot possibly know whether or not the Defendants retained any tip money.[7] Brown Decl. ¶16.

---

[7] The reality is that Defendants did not retain any tip monies whatsoever and, in fact, would deposit additional funds into this tip pool – in effect, subsidizing it – in order to ensure that each Crew Member received the agreed-upon tip amount each week. In addition, Plaintiff does not allege, because she clearly does not know due to her brief stint as a Crew Member, that $5 and $20 were the *minimum* amounts paid to Crew Members.

### D.    The "Spread of Hours" Claims

Although no separate cause of action is pleaded, the Complaint alleges in two omnibus paragraphs that employees are not paid an additional hour of pay for each hour worked in excess of 10 hours in a day and each split shift worked in a day in violation of New York's spread of hours regulation.  Compl. ¶¶ 38(f), 46(f), 81.  Notably absent from the Complaint is a single allegation supporting this claim, and there is no mention whatsoever of any "practice" that would constitute a violation of New York's spread of hours regulation.  Moreover, during her very brief stint as a Crew Member, Plaintiff was paid more than minimum wage.

### III.    LEGAL ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal quotations, citations, and alterations omitted).  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a)(2).  Iqbal, 129 S. Ct. at 1950.  Thus, unless a plaintiff's well-pleaded allegations have

"nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1950-51.

**B.    Plaintiff's Claims Against Bronfman and Geva Should Be Dismissed**

Plaintiff's claims against Individual Defendants Bronfman and Geva should be dismissed because Plaintiff has not alleged facts which demonstrate, and cannot otherwise show, that either of them is an "employer" under the FLSA and the NYLL.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d).  In order to determine whether an individual is an "employer," our courts employ the "economic reality" test in order to assess whether an individual "possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case."  Lin v. Comprehensive Health Mgm't, Inc., 08 Civ. 6519, 2009 U.S. Dist. LEXIS 29779, at *1, *5 (S.D.N.Y. Apr. 8, 2009) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)); see also Diaz v. Consortium for Worker Educ., Inc., 10 Civ. 01848, 2010 U.S. Dist. LEXIS 107722, at *1, *6 (S.D.N.Y. Sept. 28, 2010).

Under the economic reality test, a court applies the following four factors:  (1) whether the individual was able to hire and fire employees, (2) whether the individual controlled work schedules or employment conditions, (3) whether the individual determined rates and methods of payment, and (4) whether the individual maintained employment records.  Id.; see also Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.2d 253, 2011 U.S. Dist. LEXIS 58670, at *1, *132 (S.D.N.Y. May 27, 2011).  These factors are not exclusive, and a court is permitted to consider any other factors necessary to determine whether an alleged employer had functional control over employees.  Copantitla, 2011 U.S. Dist. LEXIS, at *133-34.  The NYLL's definition

of "employer" has been interpreted in a manner consistent with the FLSA.  <u>Lin</u>, 2009 U.S. Dist. LEXIS 29779, at *5.

Plaintiff's Complaint contains no factual allegations supporting her claim that Bronfman and Geva (or Shapiro) are "employers" under either the FLSA or the NYLL.  Indeed, the Complaint merely recites, in a conclusory fashion, and "upon information and belief" no less, that Bronfman and Geva meet the definition of "employer" under the FLSA.  Compl. ¶¶ 21-22.  Nowhere in the Complaint does Plaintiff plead any facts regarding Bronfman's or Geva's (or Shapiro's) involvement in the business operations of the Corporate Defendants.  Regardless, "boilerplate allegations" such as these were expressly rejected by this Court in <u>Lin</u>, and no different result should apply here.  Compl. ¶¶21-23.

In <u>Diaz</u>, this Court dismissed the plaintiffs' claims against the individual defendants where the complaint alleged that they were employers but contained no facts to support any elements of the economic reality test.  <u>Diaz</u>, 2010 U.S. Dist. LEXIS 107722, at *10.  This Court noted that "mere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details . . . are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA." <u>Id.</u> at *11 (quoting <u>Tracy v. NVR, Inc.</u>, 667 F.Supp.2d 247 (W.D.N.Y. 2009)).  Similarly, in <u>Lin</u>, this Court held that mere conclusory allegations that an individual possessed the power to control employees were insufficient to determine that individual's status as an "employer" under the FLSA or the NYLL.  <u>Lin</u>, 2009 U.S. Dist. LEXIS 29779, at *7-8.

Finally, the affidavits of Bronfman, Geva and Shapiro demonstrate that Bronfman and Geva have no control over, or involvement in, any employment decisions of the Corporate

Defendants.  Bronfman is a passive investor, and his involvement is purely financial.  Bronfman

Aff. ¶5.  Bronfman has no involvement in the hiring or firing of employees and rarely is he even

made aware of such employment decisions.  Bronfman Aff. ¶5; Shapiro Aff. ¶4.  Neither

Bronfman nor Geva (i) has any control over work schedules, (ii) makes any decisions regarding

compensation or other terms or conditions of employment, (iii) is involved in setting any of the

Corporate Defendants' wage and payroll policies and practices, or (iv) has or maintains any of

the Corporate Defendants' employment records.  Bronfman Aff. ¶5; Geva Aff. ¶5; Shapiro Aff.

¶¶3-4.  In short, Bronfman and Geva do not now have, nor have they at any time in the past had,

any involvement whatsoever in the day-to-day management of the business operations of the

Corporate Defendants.

    Therefore, Plaintiff's Complaint as against Bronfman and Geva should be dismissed in its

entirety with prejudice.

### C.    Plaintiff's Claim For Unpaid Gratuities Fails As A Matter Of Law

    Plaintiff alleges that Defendants willfully violated NYLL §196-d ("§196-d") by failing to

compensate Plaintiff and other employees for all gratuities earned.  This claim, which is not

based on Plaintiff's personal knowledge, requires dismissal because Plaintiff fails to plead any

facts sufficient to demonstrate that Defendants unlawfully retained any gratuities in violation of

§196-d.

    Section 196-d provides, in pertinent part, that "[n]o employer or his agent or an officer or

agent of any corporation, or any other person shall demand or accept, directly or indirectly, any

part of the gratuities received by an employee, or retain any part of a gratuity or of any charge

purported to be a gratuity for an employee."  N.Y. Lab. Law §196-d.  While employers are

prohibited from retaining any portion of employee gratuities, New York State Department of

Labor ("NYSDOL") regulations expressly permit employers to establish tip pools and provide

that employees can be required to agree as a condition of employment to the manner in which tips are combined and distributed.  N.Y. Comp. Codes R. & Regs tit. 12, §146-2.16 (2011) ("An employer may require food service workers to participate in a tip pool and may set the percentage to be distributed to each occupation from the tip pool."); see generally Garcia v. La Revise Assocs. LLC, No. 08 Civ. 9356, 2011 U.S. Dist. LEXIS 3325, at *1 (S.D.N.Y. Jan. 13, 2011) (discussing tip pooling as a permissible practice).

Importantly, §196-d "does not speak to the manner in which an employer must distribute or allocate gratuities among eligible employees," Elliott v. Leatherstocking Corp., 3:10-cv-934, 2011 U.S. Dist. LEXIS 40722, at *1, *15 (N.D.N.Y. Apr. 14, 2011) (dismissing claims of illegal tip pooling where plaintiffs failed to allege that defendants withheld gratuities from employees and pleaded no facts to support their claims), and this Court has interpreted the NYSDOL regulations as expressly permitting employers to establish tip pools for tip-eligible (i.e., non-management) employees.  Winans. v. Starbucks Corp., No. 08 Civ. 3734, 2011 U.S. Dist. LEXIS 76066, at *1, *8 (S.D.N.Y. July 11, 2011).

In the case at bar, Plaintiff, who worked at one store for a mere two months as a tip-eligible Crew Member, alleges no facts to support her claim that Defendants violated §196-d. Plaintiff merely alleges that Defendants paid employees a set amount in gratuities each week "notwithstanding the fact that the tips received each week far exceeded these payments." Compl. ¶52.  Putting aside the fact that there is nothing unlawful about the Corporate Defendants' alleged tip-pooling policy, Plaintiff does not allege – because she simply does not know – that tips received in any other stores were not properly distributed in accordance with the Corporate Defendants' tip-pooling arrangement.  Indeed, how could she since she worked as a Crew Member at one store location for only two months.  Amaker v. Glenn S. Goord, Comm'r, 98 Civ.

3834, 2002 U.S. Dist. LEXIS 5932, at *1, *40-41 (S.D.N.Y. Mar. 29, 2002) (dismissing claim

where plaintiff admitted no personal knowledge of crucial element of claim).

In an effort to cure this obviously fatal pleading deficiency, Plaintiff attempts to rely on

the declaration of Shanta Brown, a former payroll manager who worked for ESDD during the

2010 calendar year, to supply a factual basis for her claim. Compl. ¶59. However, Ms. Brown

concedes that she too has no personal knowledge of the actual amounts of tips received that were

deposited in the designated gratuities bank account, stating "I was not told how much money was

put into the TD Bank tip account." Brown Decl. ¶16. If Ms. Brown has no knowledge of the

amounts deposited in the account, she cannot possibly know how much stores received in

gratuities, whether the full amount of such tips was distributed to employees or whether the

Corporate Defendants "retained" any such tip monies. Incredibly, Ms. Brown was not even

employed by ESDD in April and May 2007 when Plaintiff alleges she was a Crew Member and

tip-eligible employee.

The only alleged "facts" (which are inaccurate) regarding gratuities that are offered by

either Plaintiff or Ms. Brown are the purported details of Defendants' tip-pooling policy, under

which the Defendants paid a set amount in gratuities each week based on an employee's full- or

part-time status. Compl. ¶52; Brown Decl. ¶16. Such a tip pool is expressly permitted under the

NYLL, which allows an employer to set the percentage to be distributed to each employee from

the tip pool. N.Y. Comp. Codes R. & Regs tit. 12, §146-2.16 (2011).

Accordingly, because Plaintiff offers nothing more than her (and Ms. Brown's)

conclusory speculation that Defendants retained employee gratuities, Plaintiff's gratuities claim

should be dismissed as a matter of law. See DeSilva v. N. Shore-Long Island Jewish Health

Sys., Inc., 770 F.Supp.2d 497, 509-11 (E.D.N.Y. 2011) (dismissing NYLL and FLSA claims where plaintiffs failed to provide "any specific factual allegations.").

### D.      Plaintiff's "Spread Of Hours" Claim Should Be Dismissed

Plaintiff alleges in two omnibus paragraphs of her Complaint that Defendants violated New York's spread of hours regulation.  Plaintiff, however, does not plead this claim as a separate cause of action and, more importantly, does not plead any facts to support it.  Nor could she.  The so-called spread of hours regulation applies only to employees who earn minimum wage.  Plaintiff concedes in her Complaint that she was paid well above the minimum wage, and thus she has no possible claim.

New York's spread of hours regulation, which was promulgated by the NYSDOL, provides that "an employee shall receive one hours' pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . in any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." N.Y. Comp. Codes R. & Regs. tit. 12 , §142-2.4.  According to the NYSDOL, this regulation requires an employer to pay an additional hour's pay to employees who earn only the minimum wage. ***The regulation does not apply to employees whose pay exceeds minimum wage***, and this Court has deferred to the NYSDOL's opinion. Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 U.S. Dist. LEXIS 113614, at *1, *26 (S.D.N.Y. Sept. 19, 2011) ("Because the DOL is charged with enforcing New York's labor regulations, its interpretation of New York's spread of hours provision is entitled to deference."); Espinosa v. The Delgado Travel Agency, Inc., 05 Civ. 6917, 2007 U.S. Dist. LEXIS 15149, at *1, *7-8 (S.D.N.Y. Mar. 2, 2007).  Indeed, this Court previously has held that the spread of hours "provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate."  Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 U.S. Dist. LEXIS 15780, at *1, *77 (S.D.N.Y. Mar. 31, 2006).

In several paragraphs relating to purported "questions of law" applicable to her putative class claims, Plaintiff alleges in a cursory fashion that Defendants failed to pay employees "an additional hour of pay for each hour worked in excess of ten hours in one day." Compl. ¶¶38(f), 46(f).  Nowhere in the Complaint does Plaintiff plead a single fact to support this claim.  Nor does she allege that any of the employees she seeks to represent were paid minimum wage.[8] Plaintiff does not even allege that *she* was paid minimum wage at any time during the course of her employment (and she was not).

Based on the foregoing, Plaintiff's spread of hours claim should be dismissed.  See Nakahata v. N. Y.-Presbyterian Healthcare Sys., 10 Civ. 2661, 2662, 2683, 3247, 2011 U.S. Dist. LEXIS 8585, at *1, *29 (S.D.N.Y. Jan. 28, 2011) ("[T]hese complaints contain no more than mere boilerplate assertions of various legal conclusions.  Accordingly, they cannot survive the defendants' motions to dismiss.")

---

[8] Plaintiff inconsistently alleges that either salaried or hourly employees were denied spread of hours pay in her Complaint.  It is well-settled that salaried employees are not entitled to spread of hours pay.  See, e.g., Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F.Supp.2d 569, 575 (S.D.N.Y. 2004).

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that this Court should dismiss, with prejudice, Plaintiff's Complaint in its entirety as against Individual Defendants Bronfman and Geva, and dismiss Plaintiff's claims for unpaid gratuities and spread of hours pay.

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____

Eric J. Wallach
ewallach@kasowitz.com
Joseph A. Piesco, Jr.
jpiesco@kasowitz.com
1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Defendants

November 11, 2011

17