IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MELISSA   TUCKER,   BENISHA   HUGER   and
MARIANA PENAFIEL, Individually and on behalf of all
others similarly situated,

               Plaintiffs,

-against-

EAST SIDE DD LLC, EAST SIDE DD II LLC, EAST
SIDE DB II LLC, EAST SIDE DD 101 LLC, EAST SIDE
DD 104 LLC, EAST SIDE DD 105 LLC, EAST SIDE DD
106 LLC, EAST SIDE DD 107 LLC, EAST SIDE DD 110
LLC, EAST SIDE DD 111 LLC, EAST SIDE DD 115
LLC, EAST SIDE DD 116 LLC, EAST SIDE DD 119
LLC, EAST SIDE DD 120 LLC, EAST SIDE DD 121
LLC, WEST SIDE MBV 201 LLC, WEST SIDE MBV
202 LLC, MATTHEW BRONFMAN, ALMOG GEVA,
PINCHAS SHAPIRO and JOHN DOES #1-10, Jointly and
Severally,

               Defendants.

11 CV 4907 (AKH)

ECF Case

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Eric J. Wallach
Joseph A. Piesco, Jr.
Daniel Turinsky
Attorneys for the Defendants

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ..............................................................................1

II.   FACTUAL ALLEGATIONS ................................................................................5

    A.  History of the Corporate Defendants.......................................................5

    B.  Bronfman Has No Involvement in the Management of the Corporate Defendants ............5

    C.  Plaintiffs' Crew Member Class Overtime Claim .....................................6

    D.  Plaintiffs' Gratuities Claim.......................................................................7

III.  LEGAL ARGUMENT ..........................................................................................8

    A.  Legal Standard ..........................................................................................8

    B.  Plaintiffs' Claims for Unpaid Overtime to Crew Members under the FLSA and NYLL Should Be Dismissed.........................................................9

    C.  Plaintiffs' Claims Against Bronfman Should Be Dismissed .................12

    D.  Plaintiffs' Claim For Unpaid Gratuities Fails As A Matter Of Law ................................14

IV.  CONCLUSION ...................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

Amaker v. Glenn S. Goord, Comm'r,
 98 Civ. 3834, 2002 U.S. Dist. LEXIS 5932 (S.D.N.Y. Mar. 29, 2002) ...................................16

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009).........................................................................................................8, 9

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007) .................................................................................................................9

Copantitla v. Fiskardo Estiatorio, Inc.,
 788 F.Supp.2d 253, 2011 U.S. Dist. LEXIS 58670 (S.D.N.Y. May 27, 2011)......................12

DeSilva v. N. Shore-Long Island Jewish Health Sys.,Inc.,
 770 F.Supp.2d 497 (E.D.N.Y. 2011) ...............................................................................10, 18

Diaz v. Consortium for Worker Educ., Inc.,
 10 Civ. 01848, 2010 U.S. Dist. LEXIS 107722 (S.D.N.Y. Sept. 28, 2010).....................12, 13

Elliott v. Leatherstocking Corp.,
 3:10-cv-934, 2011 U.S. Dist. LEXIS 40722 (N.D.N.Y. Apr. 14, 2011) ...............14, 15, 16, 17

Garcia v. La Revise Assocs. LLC,
 No. 08 Civ. 9356, 2011 U.S. Dist. LEXIS 3325 (S.D.N.Y. Jan. 13, 2011)............................15

Herman v. RSR Sec. Servs. Ltd., ................................................................................................12
 172 F.3d 132, 139 (2d Cir. 1999)

Lin v. Comprehensive Health Mgm't, Inc.,
 08 Civ. 6519, 2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. Apr. 8, 2009)............................12, 13

Nakahata v. New York Presbyterian Healthcare System, Inc.,
 10 Civ. 2661, 2662, 2683, 3247, 2011 U.S. Dist. LEXIS 8585 (S.D.N.Y. Jan. 28,
 2011)..................................................................................................................................9, 10, 11

Tracy v. NVR, Inc.,
 667 F.Supp.2d 247 (W.D.N.Y. 2009)......................................................................................13

Winans. v. Starbucks Corp.,
 No. 08 Civ. 3734, 2011 U.S. Dist. LEXIS 76066 (S.D.N.Y. July 11, 2011) .........................15

Zhang v. L.G. Apparel Inc.,
 09-CV-3240, 2011 U.S. Dist. LEXIS 26816 (E.D.N.Y. Feb. 18, 2011) .................................10

Zhong v. August August Corp.,
   498 F.Supp.2d 625 (S.D.N.Y. 2007) .................................................................. 10, 11

**STATUTES**

29 U.S.C. §203(d) ..................................................................................................... 12

29 U.S.C. §207(a)(1) ................................................................................................... 9

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") ..................................... 1

N.Y. Lab. Law §196-d ............................................................................................ 14, 15

New York Labor Law ("NYLL") ................................................................................. 1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 9

Federal Rule of Civil Procedure 12(b)(6) ................................................. 1, 9, 10, 13

N.Y. Comp. Codes R. & Regs tit. 12, §146-2.16 (2011) ..................................... 15, 16

Defendants East Side DD LLC, East Side DB II LLC, East Side DD 101 LLC, East Side DD 104 LLC, East Side DD 105 LLC, East Side DD 106 LLC, East Side DD 107 LLC, East Side DD 110 LLC, East Side DD 111 LLC, East Side DD 115 LLC, East Side DB 116 LLC, East Side DB 119 LLC, East Side DB 120 LLC, East Side DB 121 LLC, West Side MBV 201 LLC, West Side MBV 202 LLC (collectively, the "Corporate Defendants"),[1] Matthew Bronfman ("Bronfman"), Almog Geva ("Geva") and Pinchas Shapiro ("Shapiro") (collectively, the "Individual Defendants", together with the Corporate Defendants, the "Defendants"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss (i) the Third and Fourth Claims for Relief in the Amended Class & Collective Action Complaint (the "Complaint") of Named Plaintiffs Melissa Tucker ("Tucker"), Benisha Huger ("Huger") and Mariana Penafiel ("Penafiel") (collectively, "Plaintiffs") for alleged unpaid overtime, (ii) the Complaint against Individual Defendant Bronfman in its entirety, and (iii) Plaintiffs' Fifth Claim for Relief for alleged unpaid gratuities, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   PRELIMINARY STATEMENT

The Complaint alleges, in pertinent part, (i) that managers and assistant managers employed in various Dunkin Donuts franchises in New York City were improperly classified as exempt employees and denied overtime payments in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York Labor Law ("NYLL") (First and Second Claims for Relief); (ii) that hourly, non-exempt retail sales associates, otherwise known as "Crew Members", were improperly denied overtime payments in violation of the FLSA and NYLL (Third and Fourth Claims for Relief); (iii) that Defendants improperly withheld a portion of the

---

[1] Defendants East Side DB II 116 LLC, East Side DB II 119 LLC and East Side DB II 120 LLC are incorrectly identified in the caption of the Complaint as East Side DD 116 LLC, East Side DD 119 LLC and East Side DD 120 LLC. In addition, East Side DD II LLC and East Side DD 121 LLC do not exist.

gratuities due and owing to Crew Members in violation of the NYLL (Fifth Claim for Relief); and (iv) that Defendants violated the NYLL by failing to pay "spread of hours" pay to Crew Members (Sixth Claim for Relief).

Plaintiffs' Third and Fourth Claims for Relief, i.e., their claims of unpaid overtime to Crew Members, should be dismissed because the Complaint fails to set forth the approximate number of unpaid regular and overtime hours allegedly worked, as required by applicable law. Specifically, Tucker, a former Crew Member, Assistant Manager and Manager who was terminated for theft, offers no factual allegations whatsoever that she was denied overtime at any point when she worked as a Crew Member, although she seeks to be a representative of this purported class.  Furthermore, neither Huger nor Penafiel, both of whom worked exclusively as Crew Members during their employment, offers even the barest approximation of the number of overtime hours for which they were supposedly not properly compensated.  As a matter of law, in order to maintain a claim for unpaid overtime under the FLSA and the NYLL, Plaintiffs must offer at least a rough estimate of the number of overtime hours allegedly worked, and cannot rest a claim on a naked and vague allegation that they worked more than forty hours per week and were not properly compensated for that time.  Since Plaintiff Huger and Plaintiff Penafiel allege nothing more than that they "sometimes" worked "much more" than forty hours per week, and Tucker offers nothing whatsoever, their claim for unpaid overtime cannot be sustained and must be dismissed.

In addition, the claims against Individual Defendant Bronfman should be dismissed in their entirety.  Plaintiffs allege, solely "upon information and belief," that Bronfman became an officer and/or director of the Corporate Defendants beginning in or around January 2008, maintained operational control over the employees of the Corporate Defendants, and purportedly

2

knew of alleged illegal practices relating to wage and hour violations.  However, the Complaint is devoid of any facts to support those boilerplate allegations.  Given the absence of any facts in support of Plaintiffs' purely conclusory claims against Bronfman, Bronfman cannot be deemed an "employer" under either the FLSA or NYLL, and all claims against him properly should be dismissed as a matter of law.

Finally, Plaintiffs' Fifth Claim for Relief, i.e., their claim of unpaid gratuities, should be dismissed.  Nowhere in the Complaint do Plaintiffs plead – because they cannot – that the Corporate Defendants improperly retained tips that Plaintiffs should have received during their employment as Crew Members with the Corporate Defendants.  Plaintiffs' claim rests on nothing more than a conclusory allegation that Defendants withheld gratuities, with no facts whatsoever to support it.

Fatal to this claim is the fact that Plaintiffs have no personal knowledge of the Corporate Defendants' gratuity practices.  Tucker attempts to establish such knowledge by alleging that during her time as an Assistant Manager and Manager, she collected gratuities and deposited them in a central bank account, and the gratuities distributed to Crew Members in her store were at times lower than the amounts that she deposited in the bank account.  However, this knowledge is deficient in that she cannot know what tips were or were not collected at any of the Corporate Defendants' other stores, how much was ultimately deposited into the tip bank account, and how much was distributed to Crew Members across all of Defendants' stores.  In fact, what Plaintiff Tucker describes is nothing more than a perfectly lawful tip-pooling arrangement, in which varying amounts from each store are "pooled" and then distributed to all Crew Members in accordance with their agreement with Dunkin Donuts when they were hired.  It is to be expected that at times, Tucker could deposit a greater amount in the account than the

3

amount received by the Crew Members in that store, and Tucker does not allege that this was always the case.  Moreover, and perhaps most importantly, she does not, and cannot, allege that the Corporate Defendants retained any tips collected from any stores for their own profit or gain.

Similarly, Huger attempts to establish personal knowledge of improper tip practices based on two isolated instances in which Huger claims to have witnessed a store manager use tip money instead of petty cash to pay for a taxi, and on another occasion "certain" store managers supposedly receiving tip money with their paychecks.  However, without any supporting facts or information, these two flimsy accounts cannot possibly sustain a plausible class-wide claim that the Corporate Defendants retained employee gratuities for their own benefit.

Lastly, Plaintiffs attach to their Complaint the declaration of a former payroll manager, Shanta Brown, who purports to recount supposed "illegal" tip practices.  But, she too concedes that she has no personal knowledge of the amounts that were received in gratuities each week at any of the Corporate Defendants' stores, and has no knowledge regarding any bank transactions relating to the tip-pooling account.  If Ms. Brown does not know the amounts received or distributed in gratuities each week, there is no way she could know whether the amounts distributed were correct.  Simply put, Plaintiffs cannot possibly maintain a class action claim for purportedly unpaid tips when they have no personal knowledge of the amounts of tips collected and cannot allege in good faith that any of the Defendants retained tip money in violation of the NYLL.

Based on the foregoing, and the reasons set forth below, Plaintiffs' claims for unpaid overtime for Crew Members and unpaid gratuities should be dismissed as a matter of law with prejudice, and Plaintiffs' Complaint should be dismissed in its entirety as against Individual Defendant Bronfman.

4

## II.      FACTUAL ALLEGATIONS[2]

### A.      History of the Corporate Defendants

According to the Complaint, Individual Defendant Bronfman, along with other investors, acquired several existing Dunkin Donuts franchises in New York City in January 2008.  Compl. ¶60.  Since that time, additional Dunkin Donuts franchises at various locations throughout Manhattan have been acquired, of which Bronfman is one owner.  Compl. ¶58.  The Complaint alleges that from January 2008 through March 2009, Individual Defendant Geva was the Chief Executive Officer and maintained operational control of the Corporate Defendants.  Compl. ¶61. In March 2009, Individual Defendant Shapiro was hired as Chief Executive Officer, at which time Shapiro took over operational control of the Corporate Defendants' business operations. Compl. ¶62.  As CEO, Shapiro has control over all employment-related aspects of the Corporate Defendants.  Ibid.

### B.  Bronfman Has No Involvement in the Management of the Corporate Defendants

Plaintiffs' Complaint contains not a single fact regarding Bronfman's involvement with the management of any of the franchises.  Indeed, Plaintiffs offer nothing more than a boilerplate list of conclusory allegations to establish Bronfman's role as employer which are based solely "upon information and belief" and do not offer any factual support.  Compl. ¶60.  The purported facts offered by Plaintiffs show only that Individual Defendant Shapiro, since his hire in March 2009 as the Corporate Defendants' Chief Executive Officer, maintains operational control over the Corporate Defendants' businesses.  Compl. ¶62.  In fact, Plaintiffs themselves state very clearly that "[Shapiro] has control over all employment-related aspects of the East Side DD Enterprises' Business."  Ibid.  Taking Plaintiffs at their word indicates that Bronfman has no involvement in any employment-related functions.

---

[2] For purposes of the instant Motion only, Defendants assume the truth of Plaintiff's factual allegations.

### C.    Plaintiffs' Crew Member Class Overtime Claim

According to the Complaint, Plaintiff Tucker was hired by the Corporate Defendants in April 2007 as a Crew Member, which is an hourly, non-exempt position. Compl. ¶64.  Plaintiff Tucker worked at one of the Corporate Defendant's stores as a Crew Member for two months. Ibid.  Thereafter, she was promoted to the position of Assistant Manager, and then Manager, both of which are salaried, exempt positions.  Ibid.  Plaintiff Tucker was demoted back to Crew Member in June 2010, in which position she worked until her employment was terminated on or about May 5, 2011.  Compl. ¶¶64, 70.

Plaintiffs Huger and Penafiel were both employed by the Corporate Defendants as Crew Members in several store locations.  Compl. ¶¶72, 77.  Huger was employed sporadically for approximately twelve months between August 2008 and 2010, and Penafiel was employed sporadically for approximately twelve months between 2007 and 2010.  Ibid.

Tucker makes no allegations regarding any overtime work for which she was not properly compensated during her brief periods as a Crew Member, presumably because she was properly paid for all overtime hours that she worked as a Crew Member.  Plaintiffs Huger and Penafiel each allege that they "typically" worked approximately forty hours per week, and "sometimes much more," but that each "routinely" had their overtime hours reduced or paid in the following work week.  Compl. ¶¶73, 75, 78-79.  Nowhere in the Complaint do Plaintiffs explain the contradiction between the assertion that Plaintiffs Huger and Penafiel typically worked a regular forty hour workweek that would not entitle them to overtime pay, and the assertion that they were routinely denied overtime.  Moreover, neither Huger nor Penafiel makes even the slightest attempt to approximate the number of overtime hours for which they were denied any pay, and offers no such estimate for any other Crew Member, despite their claims that such practices were a regular occurrence.

6

**D.    Plaintiffs' Gratuities Claim**

As Crew Members, Plaintiffs were eligible for and regularly received a share of the gratuities earned in each of their store locations. Compl. ¶¶65, 70, 76, 80. The Corporate Defendants maintained a system of tip pooling for all hourly, tip-eligible employees in which Defendants collected and deposited all of the gratuities from each store location into a designated bank account. According to the Complaint, on a weekly basis, Crew Members would receive either $5 or $20 from that pooled account based on his or her full or part-time status. Compl. ¶65.[3] Plaintiffs allege in a conclusory fashion that under this tip-pooling system (which they do not claim in and of itself to be unlawful), employees were not paid all gratuities earned at each store location. Ibid.

Plaintiff Tucker attempts to establish personal knowledge of improper tip practices through her assertion that during her time as an Assistant Manager and Manager, she was required to collect tips and deposit them in the designated bank account, but that the full amounts *of those* tips were not paid to Crew Members. Compl. ¶66. However, Plaintiff Tucker describes nothing more than a proper tip pooling practice, in which it is to be expected that amounts collected and distributed in individual stores may vary. Similarly, Plaintiff Huger claims to have witnessed examples of improper tip practices such as instances of Managers in one store location using tip money instead of petty cash to pay for transportation to another store location, or instances of Managers and Assistant Managers receiving a distribution from the tip pool. Compl. ¶76. Although Tucker claims to have worked for at least ten of the Corporate Defendants' Dunkin Donuts locations in Manhattan (Compl. ¶ 63), she does not allege that she ever received

---

[3] The Complaint is internally inconsistent on this point. In paragraph 65, Plaintiffs allege that "members of the Crew Member Class were paid $5 per week in gratuities if they worked fewer than 30 hours and $20 per week if they worked more than 30 hours during the week. . . ." However, Huger and Penafiel allege that they received "approximately $20 in gratuities each week," and that they would receive a reduced amount of gratuities based on the number of hours worked if they "did not work a full forty (40) hours in a given week." Compl. ¶¶ 76, 80.

gratuities while employed as a manager in any of those stores. Indeed, noticeably absent from the Complaint are any specific factual allegations reflecting that the Corporate Defendants had a policy or practice of withholding gratuities from employees for their own benefit.

In an attempt to cure the clear deficiencies in their claims, Plaintiffs attach a purported declaration from Defendants' former payroll manager, Shanta Brown, who worked for the Corporate Defendants for approximately one year, in 2010. Compl. ¶81. Similarly absent from Ms. Brown's declaration is any fact-specific information to support Plaintiffs' general conclusory claim that gratuities were retained by any of the Defendants, or any allegation that Store Managers or Assistant Store Managers retained any gratuities meant for Crew Members. Moreover, Ms. Brown concedes she has no personal knowledge of the amounts of tips received by the stores or how much was deposited into the bank account established to handle these funds, and thus cannot possibly know whether or not the Defendants retained any tip money.[4] Brown Decl. ¶16.

### III.   <u>LEGAL ARGUMENT</u>

#### A.   **Legal Standard**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

---

[4] The reality is that Defendants did not retain any tip monies whatsoever and, in fact, would deposit additional funds into this tip pool – in effect, subsidizing it – in order to ensure that each Crew Member received the minimum tip amount each week. In addition, Plaintiffs do not allege, because they clearly do not know, that $5 and $20 were the *minimum* amounts paid to Crew Members. Plaintiffs indirectly corroborate this fact by asserting in the Complaint that Huger and Penafiel "received *approximately* $20 in gratuities each week," which suggests that they sometimes received more than that amount. Compl. ¶¶ 76, 80 (Emphasis added).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a)(2). Iqbal, 129 S. Ct. at 1950. Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1950-51.

**B.    Plaintiffs' Claims for Unpaid Overtime to Crew Members under the FLSA and NYLL Should Be Dismissed**

Plaintiffs' Third and Fourth claims for unpaid overtime on behalf of the Crew Member Class under the FLSA and the NYLL should be dismissed because Plaintiffs have failed to plead facts sufficient to establish an overtime violation under either the FLSA or the NYLL.[5]

Under §207 of the FLSA, employers are required to pay their employees overtime at a rate of one and a half times an employee's regular rate for all hours worked in excess of forty per week. 29 U.S.C. §207(a)(1). Similarly, New York's overtime requirements can be found in regulations promulgated under the New York State Minimum Wage Act, which impose the same overtime rate as the FLSA. 12 NY ADC §142-2.2.

To state a claim for relief for overtime violations under both the FLSA and the NYLL, a complaint must at a minimum "set forth the approximate number of unpaid regular and overtime hours allegedly worked." Nakahata v. New York Presbyterian Healthcare System, Inc., 10 Civ. 2661, 2662, 2683, 3247, 2011 U.S. Dist. LEXIS 8585, at *20-21 (S.D.N.Y. Jan. 28, 2011)

---

[5] By way of this Motion, Defendants do not seek to dismiss Plaintiffs' claims for alleged unpaid overtime to Managers and Assistant Managers, as set forth in the First and Second Claims for Relief.

9

(dismissing an overtime violation claim where complaint made no factual allegations as to number of overtime hours worked.) "Simply stating that Plaintiffs were not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA," Zhong v. August August Corp., 498 F.Supp.2d 625, 630 (S.D.N.Y. 2007) (quoting Acosta v. The Yale Club of N.Y.C., 94 Civ. 0888, 1995 U.S. Dist. LEXIS 14881, at *11 (S.D.N.Y. Oct. 5, 1995), nor is it sufficient to "merely allege that Plaintiffs worked beyond forty hours per week." DeSilva v. N. Shore-Long Island Jewish Health Sys.,Inc., 770 F.Supp.2d 497, 509 (E.D.N.Y. 2011) (dismissing overtime claims where plaintiffs offered no factual evidence to support claim that they worked beyond forty hours per week).

In Nakahata, this Court dismissed a complaint for unpaid overtime pursuant to Rule 12(b)(6) under both the FLSA and the NYLL where the complaint offered no factual basis for the plaintiffs' overtime claims. This Court noted that "[the complaints] contain no information that might nudge the allegations from speculative to plausible. Rather, they merely assert that 'Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all these hours.'" Nakahata, 2011 U.S. Dist. LEXIS 8585, at *21. Similarly, the Eastern District of New York dismissed an overtime claim on a motion to dismiss where the plaintiff's complaint "state[d] only that 'she worked over forty (40) hours per week' and 'often worked over ten (10) hours per day'" and "[said] nothing about how much she was compensated for the hours she worked or even approximately how many overtime hours she worked." Zhang v. L.G. Apparel Inc., 09-CV-3240, 2011 U.S. Dist. LEXIS 26816, at *10-11 (E.D.N.Y. Feb. 18. 2011).

Here, Plaintiffs base their FLSA and NYLL overtime claims on behalf of the Crew Member Class on similarly insufficient grounds. As a preliminary matter, Plaintiff Tucker

makes no specific factual allegations that she failed to receive any overtime pay while she worked as an hourly Crew Member, although she purports to be a representative of the Crew Member Class.  Furthermore, although Plaintiffs allege that Defendants had a policy of "shaving hours and shifting them from one week to another to reduce overtime," Compl. ¶¶35, 75, Plaintiffs do not offer even the slightest approximation of the number of overtime hours allegedly worked by them or any other Crew Member.  Plaintiffs Huger and Penafiel both assert that they "typically worked approximately forty (40) hours each week, and sometimes much more," Compl. ¶¶73, 78, and "routinely had [their] reported overtime hours reduced and/or paid in the following workweek at [their] regularly hourly rate." Compl. ¶¶75, 79.  These allegations are so vague that Defendants cannot even begin to speculate as to how much overtime either Plaintiff was purportedly denied.  Notably, these flimsy allegations are almost identical to those that this Court found to be utterly insufficient to maintain a claim in Nakahata.

More puzzling are the flatly contradictory assertions that Plaintiffs Huger and Penafiel both "typically" worked forty hours per week, and yet "regularly" were denied overtime.  It is to resolve exactly these types of contradictory and confusing assertions in a complaint that our courts have imposed the requirement that Plaintiffs at least attempt to approximate the number of overtime hours for which they were not properly compensated.  See Zhong, 498 F.Supp.2d at 630 (dismissing plaintiff's overtime claims under the FLSA and NYLL where complaint contained conflicting details regarding plaintiffs hours worked and no approximation of overtime).

Based on the foregoing, Plaintiffs' Third and Fourth Claims for Relief should be dismissed in their entirety.

**C.     Plaintiffs' Claims Against Bronfman Should Be Dismissed**

Plaintiffs' claims against Individual Defendant Bronfman should be dismissed because Plaintiffs have not alleged facts which demonstrate, and cannot otherwise show, that he is an "employer" under the FLSA and the NYLL.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). In order to determine whether an individual is an "employer," courts employ the "economic reality" test to assess whether an individual "possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." Lin v. Comprehensive Health Mgm't, Inc., 08 Civ. 6519, 2009 U.S. Dist. LEXIS 29779, at *1, *5 (S.D.N.Y. Apr. 8, 2009) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)); see also Diaz v. Consortium for Worker Educ., Inc., 10 Civ. 01848, 2010 U.S. Dist. LEXIS 107722, at *1, *6 (S.D.N.Y. Sept. 28, 2010).

Under the economic reality test, a court applies the following four factors:  (1) whether the individual was able to hire and fire employees, (2) whether the individual controlled work schedules or employment conditions, (3) whether the individual determined rates and methods of payment, and (4) whether the individual maintained employment records. Id.; see also Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.2d 253, 2011 U.S. Dist. LEXIS 58670, at *1, *132 (S.D.N.Y. May 27, 2011). These factors are not exclusive, and a court is permitted to consider any other factors necessary to determine whether an alleged employer had functional control over employees. Copantitla, 2011 U.S. Dist. LEXIS, at *133-34. The NYLL's definition of "employer" has been interpreted in a manner consistent with the FLSA. Lin, 2009 U.S. Dist. LEXIS 29779, at *5.

Plaintiffs' Complaint contains no factual allegations supporting their claim that Bronfman is an "employer" under either the FLSA or the NYLL.  Indeed, the Complaint merely recites, in a conclusory fashion, and "upon information and belief" no less, that Bronfman meets the definition of "employer" under the FLSA.  Compl. ¶60.  Nowhere in the Complaint do Plaintiffs plead any actual facts regarding Bronfman's involvement in the business operations of the Corporate Defendants that are not based solely "upon information and belief."  Ibid. "Boilerplate allegations", based solely "upon information and belief" such as these, were expressly rejected by this Court in Lin and Diaz.  No different result should apply here, particularly given that Plaintiffs themselves actually assert that "[Shapiro] has control over all employment-related aspects of the East Side DD Enterprises' business."  Compl. ¶62.

In Diaz, Chief Judge Preska dismissed the plaintiffs' claims where the complaint alleged that the defendant was an employer under the FLSA but contained no facts to support any elements of the economic reality test.  Diaz, 2010 U.S. Dist. LEXIS 107722, at *10.  The Court noted that "mere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details -- essentially a formulaic recitation of the elements of a cause of action -- are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA."  Id. at *11 (quoting Tracy v. NVR, Inc., 667 F.Supp.2d 247 (W.D.N.Y. 2009)).  Similarly, in Lin, this Court granted a Rule 12(b)(6) motion to dismiss on the grounds that mere conclusory allegations that an individual possessed the power to control employees are insufficient to determine that individual's status as an "employer" under the FLSA or the NYLL.  Lin, 2009 U.S. Dist. LEXIS 29779, at *7-8.  See also Tracy, 667 F.Supp.2d at 247 (finding plaintiffs failed to establish employer status where

13

allegations were based solely upon information and belief and no substantiating facts were offered).

Because Plaintiffs offer nothing more than conclusory allegations and in fact plead that Shapiro makes all employment-related decisions, Bronfman cannot be an employer for purposes of the FLSA or the NYLL and Plaintiffs' Complaint as against Bronfman should be dismissed in its entirety with prejudice.

### D.   Plaintiffs' Claim For Unpaid Gratuities Fails As A Matter Of Law

Plaintiffs allege that Defendants willfully violated NYLL §196-d ("§196-d") by failing to compensate Plaintiffs and other employees for all gratuities earned. This claim, which is not based on the personal knowledge of any of the Plaintiffs, requires dismissal because Plaintiffs fail to plead any facts sufficient to demonstrate that Defendants unlawfully retained any gratuities in violation of §196-d.

Section 196-d provides, in pertinent part, that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law §196-d. Courts in this Circuit have established that "[f]or there to be a violation of §196-d, the employer must retain a portion of the gratuities by keeping them as a profit, using those monies for operating costs, or distributing those monies to employees who are not otherwise eligible to receive gratuities." Elliott v. Leatherstocking Corp., 3:10-cv-934, 2011 U.S. Dist. LEXIS 40722, at *1, *15 (N.D.N.Y. Apr. 14, 2011) (dismissing claims of illegal tip pooling where plaintiffs failed to allege that defendants withheld gratuities from employees and pleaded no facts to support their claims). This interpretation is consistent with this Court's understanding of the purpose behind §196-d, namely "to end the unfair and deceptive practice of an employer retaining money paid by a

14

patron under the impression that he is giving it to the employee, not the employer." Winans v. Starbucks Corp., No. 08 Civ. 3734, 2011 U.S. Dist. LEXIS 76066, at *1, *8 (S.D.N.Y. July 11, 2011).

While employers are prohibited from retaining any portion of employee gratuities, New York State Department of Labor ("NYSDOL") regulations expressly permit employers to establish tip pools and provide that employees can be required to agree as a condition of employment to the manner in which tips are combined and distributed. N.Y. Comp. Codes R. & Regs tit. 12, §146-2.16 (2011) ("An employer may require food service workers to participate in a tip pool and may set the percentage to be distributed to each occupation from the tip pool."); see generally Garcia v. La Revise Assocs. LLC, No. 08 Civ. 9356, 2011 U.S. Dist. LEXIS 3325, at *1 (S.D.N.Y. Jan. 13, 2011) (discussing tip pooling as a permissible practice).

Importantly, §196-d "does not speak to the manner in which an employer must distribute or allocate gratuities among eligible employees," Elliott v. Leatherstocking Corp., 3:10-cv-934, 2011 U.S. Dist. LEXIS 40722, at *1, *15 (N.D.N.Y. Apr. 14, 2011) (dismissing claims of illegal tip pooling where plaintiffs failed to allege that defendants withheld gratuities from employees and pleaded no facts to support their claims), and this Court has interpreted the NYSDOL regulations as expressly permitting employers to establish tip pools for tip-eligible (i.e., non-management) employees. Winans. v. Starbucks Corp., No. 08 Civ. 3734, 2011 U.S. Dist. LEXIS 76066, at *1, *8 (S.D.N.Y. July 11, 2011).

In the case at bar, Plaintiffs allege no facts to support their contention that Defendants violated §196-d. Plaintiffs base their claims on the vague allegation that Defendants paid employees a set amount in gratuities each week "notwithstanding the fact that the tips received each week far exceeded these payments." Compl. ¶70. Putting aside the fact that there is

15

nothing unlawful about the Corporate Defendants' alleged tip-pooling policy, Plaintiffs offer no factual allegations that tips received were not properly distributed in accordance with the Corporate Defendants' tip-pooling arrangement, because they simply have no personal knowledge in this regard.  See Amaker v. Glenn S. Goord, Comm'r, 98 Civ. 3834, 2002 U.S. Dist. LEXIS 5932, at *1, *40-41 (S.D.N.Y. Mar. 29, 2002) (dismissing claim where plaintiff admitted no personal knowledge of crucial element of claim).

Although Plaintiff Tucker attempts to establish personal knowledge of improper tip practices because as an Assistant Manager and Manager, she was responsible for collecting and depositing into the designated bank account gratuities in her store location, this "knowledge" is clearly insufficient.  Plaintiff Tucker describes nothing more than the end results of Defendants' proper tip-pooling policy, under which the Defendants collected and pooled gratuities and distributed a set amount each week based on an employee's full or part-time status.  Compl. ¶65; Brown Decl. ¶16.  Such a tip pool is expressly permitted under the NYLL, which allows an employer to set the percentage to be distributed to each employee from the tip pool.  N.Y. Comp. Codes R. & Regs tit. 12, §146-2.16 (2011).  Naturally, this may result in some instances of employees ultimately receiving less than the amount they originally contributed to the pool, but the converse is also true, and such variances do not render a tip pool improper.  See generally Elliott, 2011 U.S. Dist. LEXIS 40722 (noting that a tip pool is not improper simply because employer did not distribute 100% of tips to the class members for whose services the tips were paid).

Similarly, Huger's dubious description of managers appearing to use gratuity money to pay for a taxi ride, or of managers in a single store location appearing to receive a gratuity payment, is simply no basis for a claim that the Corporate Defendants improperly retained

gratuities in violation of the NYLL.  Huger cannot establish that the Corporate Defendants retained such gratuities for their profit or gain simply by describing the isolated acts of a single rogue store manager or assistant manager out of many managers and locations.  See Elliott, 2011 U.S. Dist. LEXIS 40722, at *14.[6]  It is also notable that neither of the other named Plaintiffs can offer any such "evidence."  In fact, although Tucker claims to have worked for at least ten of the Corporate Defendants' Dunkin Donuts locations in Manhattan, she does not allege that she ever received gratuities while employed as a manager in any of those stores.

In an effort to cure their obvious pleading deficiencies, Plaintiffs attempt to rely on the declaration of Shanta Brown, a former payroll manager who worked for the Corporate Defendants during the 2010 calendar year, to supply a factual basis for their claim.  Compl. ¶81.  However, Ms. Brown concedes that she too has no personal knowledge of the actual amounts of tips received that were deposited in the designated gratuities bank account, stating "I was not told how much money was put into the TD Bank tip account."  Brown Decl. ¶16.  If Ms. Brown has no knowledge of the amounts deposited in the account, she cannot possibly know how much stores received in gratuities, whether the full amount of such tips was distributed to employees or whether the Corporate Defendants "retained" any such tip monies.  Moreover, Ms. Brown does not even allege that any Store Managers or Assistant Store Managers retained any gratuities meant for Crew Members

Accordingly, because Plaintiffs offer nothing more than their (and Ms. Brown's) conclusory speculations that Defendants retained employee gratuities, Plaintiffs' gratuities claim

---

[6] Huger also has no personal knowledge as to why a particular Manager or Assistant Manager may have received an extra payment in a particular week, nor does she know whether a particular employee is exempt or non-exempt.  Her speculative assertion that payments received by Managers or Assistant Managers were from the tip pool is purely conclusory, and clearly insufficient to defeat Defendants' Motion.

should be dismissed as a matter of law.  See DeSilva, 770 F.Supp.2d at 509-11 (dismissing NYLL and FLSA claims where plaintiffs failed to provide "any specific factual allegations.").

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that this Court should dismiss, with prejudice, Plaintiffs' Complaint in its entirety as against Individual Defendant Bronfman, and dismiss Plaintiffs' Third, Fourth, and Fifth Claims for Relief.

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
Eric J. Wallach
ewallach@kasowitz.com
Joseph A. Piesco, Jr.
jpiesco@kasowitz.com
Daniel Turinsky
dturinsky@kasowitz.com
1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Defendants

Dated:  January 6, 2012
New York, New York